## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| JING GAO, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 3:16-cv-00323 |
| | ) | |
| BLUE RIDGE LANDFILL TX, LP | ) | |
| | ) | |
| Defendant. | ) | |

## BLUE RIDGE LANDFILL TX, LP'S MOTION FOR SUMMARY JUDGMENT

Defendant Blue Ridge Landfill TX, LP (BRL) files this Motion for Summary Judgment in this alleged class action based on negligence because the named Plaintiffs Jing Gao, Alvin Rabsatt, Barry Nixon, Patricia Nixon, Katherine Pierce, Arthur Pierce, Madison Lowe, and Iolanda Lowe lack standing to present these claims. Alternatively, the statute of limitations bars the named Plaintiffs' claims.

## INTRODUCTION

BRL began operations in 1992. Almost ten years later, in 2001 the Shadow Creek Ranch Subdivision (Shadow Creek) began development across the street from BRL and other industrial entities. While BRL disputes being the cause of any nuisance odor, Plaintiffs testified that odors existed at least as early as 2007—far more than two years before Plaintiffs filed suit on November 17, 2016. Plaintiffs Iolanda and Madison Lowe claim to have experienced the offensive odors in 2007. Ex. 10 (Lowe Odor Data Sheet);

1

*see also* Ex. 2 (I. Lowe Deposition) at 17:11-25 (noticed odors since purchasing property in 2007).  During her deposition, Ms. Lowe even recounted a 2007 door-to-door petition in the neighborhood regarding the odor.  Ex. 2 at 21:21–22:14.

Plaintiffs Patricia and Barry Nixon both claim an objectionable smell "since being here."  Ex. 3 (Nixon Odor Data Sheet).  The Nixon's moved into their home in March 2012. Ex. 4 (B. Nixon Deposition) at 14:18-21.

In addition to the Plaintiffs' testimony, Plaintiffs also produced surveys of home owners from the area surrounding BRL.  Those surveys by putative class members allege odor complaints from various sources in the area as early as 2001.  Allegations of odors to the Texas Commission on Environmental Quality (TCEQ) date back to 2004.  There is even a prior case filed by a Shadow Creek Ranch resident against BRL in January 2009 setting out the same nuisance claims that Plaintiffs now allege. Ex. 5 (Nadalo Original Petition).

But Plaintiffs waited until November 17, 2016 to file suit.[1]  Simply put, Plaintiffs' lawsuit came too late.

## SUMMARY OF THE ARGUMENT

### A.    Plaintiffs lack standing.

The negligence claim for alleged nuisance belonged to the residents who owned the

---

[1] In the past, courts have sometimes spoken of nuisance as a cause of action.  The Texas Supreme Court recently clarified that a nuisance is a type of *injury* rather than a cause of action.  *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594–95 (Tex. 2016) (clarifying that "the term 'nuisance' does not refer to the 'wrongful act' or to the 'resulting damages,' but only to the legal injury . . . that may result from the wrongful act and result in the compensable damages").

property when the alleged nuisance first arose.  Subsequent owners of the land—including all of the named Plaintiffs—lack standing to pursue those claims.

The Texas Supreme Court outlined a clear standard for analyzing alleged nuisances, including how courts should determine the preliminary question of law as to whether to classify a nuisance as permanent or temporary.  *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 276 (Tex. 2004).  In *Schneider*, the Court announced the following rule:

> [A] nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty.  Conversely, a nuisance should be deemed permanent if it is sufficiently constant or regular … that future impact can be reasonably evaluated.

*Id*. at 281.  In this case, Plaintiffs allege continuous odors in the area since at least 2007.  Odor data sheets provided by other putative class members assert alleged odor complaints dating back to 2001.  Allegations of odors to the TCEQ began as early as 2004.

Because Plaintiffs allege a permanent nuisance, any cause of action for the nuisance injury accrued at the time of injury to the property.  *Id.* at 270.  This allegedly occurred at least as early as 2001 <u>before</u> the named Plaintiffs purchased their property.  And, only the owner of an affected piece of property may sue for an injury to the land (like nuisance).  *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562 (Tex. 1936) (holding that absent an express assignment when land is injured by permanent nuisance, no right of action accrues to subsequent purchaser).

Accordingly, taking Plaintiffs' allegations as true, the only persons with standing to sue are the persons who owned the properties affected at least as early as 2001.  None of

3

281.011/633859

the named Plaintiffs fit that bill, and none of them holds an express assignment from a former owner who does.  The named Plaintiffs therefore have no legal right to sue for the injury they allege.

**B.      Limitations bars Plaintiffs' claims.**

Even if the named Plaintiffs did have standing to sue—which they do not—the statute of limitations bars their claims.  Permanent nuisance claims accrue when the alleged injury first occurs; they do not "renew" with each subsequent report of an odor.  *Schneider*, 147 S.W.3d at 270.  Once it accrues, a claim to recover for a permanent nuisance injury is subject to a two-year statute of limitations.  *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017).  Taking Plaintiffs' allegations as true, as this Court must for purposes of this Motion, the first injury from an alleged nuisance odor occurred long before November 17, 2014—two years prior to the filing of this lawsuit.  Plaintiffs' claims are therefore untimely.

<u>**SUMMARY OF RELEVANT UNDISPUTED FACTS**</u>

BRL has operated a landfill located on FM 521 in Fort Bend County, Texas, since 1992.  The State of Texas regulates BRL's operations through the TCEQ.  When BRL first began operations, the area surrounding the landfill consisted of farm land, chemical plants and other industry.   By 2001, that began to change as the Shadow Creek Ranch Development Company began the sale of homes in a 3,300 acre master planned community located across the street from various industries and BRL.  Developers continue to sell homes near BRL today.

281.011/633859

Certain of the named Plaintiffs allege that they suffered from "noxious odors" as early as 2007 – more than nine years before filing suit.  Plaintiffs Iolanda and Madison Lowe moved into their home in 2007, and claim to have experienced the offensive odor from the beginning. Ex. 1; *see also* Ex. 2 at 17:11-25 (noticed odors since purchasing property in 2007).  During her deposition, Ms. Lowe even recounted a 2007 door-to-door petition in the neighborhood regarding the odor.  Ex. 2 at 21:21–22:14.

Plaintiffs Patricia and Barry Nixon purchased and moved into their home in March 2012. Ex. 4 at 14:18-21.  They both reported the objectionable smell "since being here." Ex. 3.

Plaintiffs Kathryn and Arthur Pierce have lived in their home since April 2014 and claim they noticed the odors as early as that summer.  Ex. 6 (A. Pierce Deposition) at 10:8-12, 20:14–19, 38:4–11.  Plaintiffs Jing Gao and Alvin Rabsatt closed on their house in December 2014—long after other residents complained of odors in the area—and both have testified they noticed the smell shortly after moving into their home.   Ex. 7 (J. Gao Deposition) at 27:2-7; Ex. 8 (A. Rabsatt Deposition) at 24:8-14.

But allegations of odors in this industrialized area do not end with the named Plaintiffs.  In January 2009, a resident of Shadow Creek Ranch filed a lawsuit against BRL that asserts almost identical claims to those now raised by Plaintiffs:  the homeowners in that case alleged that they noticed odors at their home in Shadow Creek Ranch and brought negligence, gross negligence, and nuisance claims regarding the alleged smells.  *See* Ex. 5. In addition, other proposed class members in the case now before this Court allege odors in the area dating back to 2001.  Surveys of residents collected and produced by Plaintiffs

in this lawsuit catalog odor complaints dating back to 2001. *See, e.g.*, Ex. 9 (J. Lewis-Riley Odor Data Sheet)(odor data sheet dated October 7, 2016 reports having experienced offensive odors for 15 years). A resident who moved to the neighborhood in 2002 reported that he experienced offensive odors for the past sixteen years, and another reported having experienced odors for as long as eight to ten years. Ex. 10 (C. Casher Odor Data Sheet); Ex. 11 (D. Gonzales Odor Data Sheet). Other residents self-reported having experienced the smells after they moved into the neighborhood over the years including since 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014 and on. Ex. 12 (Sample Set of Odor Data Sheets).

In the resident data sheets collected by Plaintiffs, a handful of residents reported that, despite experiencing alleged odors in the neighborhood, they purchased another home within the same community where they claim to have already experienced the "offensive" odors. *See, e.g.*, Ex. 13 (C. Jackson Odor Data Sheet)(reported purchasing homes in the community in 2009 and 2013 and experienced offensive odors "since purchase"). One repeat-buyer resident described having experienced offensive odors for one to two years at her first home in the community and then for another three years at her subsequent new home purchase. Ex. 14 (B. Jacko Odor Data Sheet).

TCEQ records also reflect allegations of odors from various sources in the area as early as 2004. For example, a TCEQ complaint on January 30, 2004, alleged "landfill creating a nuisance odor." Ex. 15 (TCEQ Complaint dated 1/30/2004). Complaints from 2006 alleged that the "[o]dor coming from the landfill is bad enough to keep the complainant's from enjoying their property," while another says: "Enough! Smell is

6

terrible . . ." Ex. 16 (TCEQ Complaint dated 11/27/2006);  Ex. 17 (TCEQ Complaint dated 11/14/2006).

## ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the movant demonstrates the absence of a material fact issue, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (internal quotation marks omitted).

Because standing is an "essential component[] of federal subject-matter jurisdiction," the lack of standing "can be raised at any time by a party or by the court." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).  When a plaintiff's standing is challenged at the summary judgment stage, the plaintiff cannot rest on its pleadings; instead, it "must set forth by affidavit or other evidence specific facts" that demonstrate standing exists.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted); *see also Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999).

When summary judgment is sought on an affirmative defense, such as limitations, the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334

(5th Cir. 2017) (internal quotation marks omitted).  Once the movant makes this showing, the burden shifts to the nonmovant to establish a fact issue that warrants trial.  *Id.*

**B.    Plaintiffs claim the alleged nuisance odors are "permanent."**

Whether a nuisance may be considered "permanent" or "temporary" is a question of law for the court to decide."  *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 481 (Tex. 2014).  The classification of a nuisance as either temporary or permanent affects several aspects of how a claim must be treated.  *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 276 (Tex. 2004).  They include "(1) whether damages are available for future or only past injuries; (2) whether one or a series of suits is required; and (3) whether claims accrue (and thus limitations begins) with the first or each subsequent injury."  *Id.* at 275. Here, Plaintiffs' allegations establish a claim for a permanent nuisance.[2]

A nuisance "should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated." *Schneider*, 147 S.W.3d at 281; *see also id.* at 283 ("a recurrent nuisance is a permanent one").  "Generally, if a nuisance occurs at least a few times a year and appears likely to continue," it should be deemed to be permanent.  *Id.* at 280; *see also id.* at 290 (odors that occurred "at least several times in most weeks or months" held to be permanent as a matter

---

[2] A plaintiff cannot "elect whether to assert a temporary [or] permanent nuisance."  *Schneider*, 147 S.W.3d at 281.  The nature of the nuisance follows "directly from the underlying facts."  *Id.*  Where those facts show the alleged nuisance is permanent in nature, a plaintiff "cannot opt for an indefinite limitations period or a series of suits" by characterizing the nuisance as temporary.  *Id.* at 281–82.

of law); *Gilbert Wheeler*, 449 S.W.3d at 480 (injury to land is permanent if "it is substantially certain that the injury will repeatedly, continually, and regularly recur").

Plaintiffs testified that the alleged odor recurs frequently and has done so for more than a decade. The odor "comes and goes" multiple times per week. *See* Ex. 2 at 24:1–10; Ex. 18 (K. Pierce Deposition) at 24:20–24 ("around two weeks might be the most we've gone without smelling it"). The named Plaintiffs claim to have repeatedly experienced the odor since they moved into the neighborhood. *See, e.g.*, Ex. 2 at 17:11–25 (since purchasing property in 2007); Ex. 4 at 19:4–12 (since moving in 2012).

It does not matter that the odor may shift with the wind or with the seasons. Although "air-quality complaints . . . may be worse under certain conditions, . . . no one would presume the wind will never change." *Schneider*, 147 S.W.3d at 283. Under similar circumstances, one court of appeals held landfill odors constituted a permanent nuisance as a matter of law even though they varied "as the West Texas wind changed." *City of Lubbock v. Tice*, 517 S.W.2d 428, 431 (Tex. Civ. App.—Amarillo 1974, no writ). Another court of appeals treated odors from a cattle feedlot similarly. *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 410, 413 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.).[3] "Odors that are most repugnant when the wind is from one direction are not temporary, at

---

[3] Plaintiffs may point to cases which held recurrent odors to be temporary (or at least potentially temporary) and contend the same result should follow here. But in *Schneider*, the Texas Supreme Court recognized the "unreconcilable" nature of the prior case law on nuisance and explained that "half of [the cases] must be wrong." 147 S.W.3d at 274. As the *Schneider* opinion makes clear, frequent, recurrent odors constitute a permanent nuisance. *Id.* at 280–83.

least when there is no evidence those winds are so rare and unexpected that jurors would have to guess their future impact on property values." *Schneider*, 147 S.W.3d at 290–91.

Plaintiffs' Complaint further confirms Plaintiffs seek to recover for a permanent nuisance.  Plaintiffs claim their property values have been reduced by "noxious odors," and they seek to recover damages measured by that alleged loss of market value.  *See* Compl. (Dkt. No. 1) ¶¶3.14, 5.09, 5.13.  That measure of damages is only available if the nuisance is permanent; in fact, it is the *only* measure of damages for a permanent nuisance.  *See Schneider*, 147 S.W.3d at 276 (damages for "lost use and enjoyment" and "lost market value" are "mutually exclusive" remedies for temporary and permanent nuisances, respectively).  By seeking to recover lost market value, Plaintiffs confirm they have alleged a permanent nuisance claim.

By contrast, "a nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty." *Schneider*, 147 S.W.3d at 281; *Gilbert Wheeler*, 449 S.W.3d at 480 (injury to land is temporary if "any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable").  Temporary nuisances are the opposite of conditions that occur "regularly" or "frequently" or "often." *Schneider*, 147 S.W.3d at 290.  The Texas Supreme Court described the prototypical temporary nuisance as a condition which "occur[s] only once." *See id.* at 280.  Based on Plaintiffs' allegations, the alleged nuisance must be considered permanent as a matter of law.

**C.      Plaintiffs lack standing to sue for permanent nuisance.**

Only the owner of land affected when the nuisance first arose may sue to recover

for that injury.  *See Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562 (Tex. 1936); *see*

*also In re Premcor Ref. Group, Inc.*, 233 S.W.3d 904, 908 (Tex. App.—Beaumont 2007,

orig. proceeding) ("a cause of action for injury to real property is a personal right which

belongs to the person who owns the property at the time of the injury").

If the land affected by a nuisance subsequently changes hands, the right to sue does

not pass to the new owner.  *See Vann*, 90 S.W.2d at 563; *Senn v. Texaco, Inc.*, 55 S.W.3d

222, 225 (Tex. App.—Eastland 2001, pet. denied) ("The right to sue for injury to the land

is not a right that runs with the land.").  Instead, the original owner must expressly assign

that right to the new owner.  *See Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.—Tyler

2002, pet. denied).  If the purchaser does not obtain that assignment, he "cannot recover

for an injury committed before his purchase."  *Id.*  Thus, for purposes of standing, the "key

inquiry is whether Plaintiffs had an interest in the property when the nuisance originally

commenced," or obtained an express assignment of such an interest.  *See Brinston v.*

*Koppers Indus., Inc.*, 538 F. Supp. 2d 969, 979 (W.D. Tex. 2008).

Courts routinely bar subsequent purchasers from bringing permanent nuisance suits

where the alleged injury first occurred prior to those purchasers acquiring the property.  *See*

*Vann*, 90 S.W.2d at 562–63; *Senn*, 55 S.W.3d at 226; *In re Premcor*, 233 S.W.3d at 908–

10; *Brinston*, 538 F. Supp. 2d at 978–79.

Plaintiffs' counsel gathered and produced testimonials from persons living near

BRL over the last 20 years.  Those testimonials allege the presence of odors in the area for

281.011/633859

more than a decade and well before the Plaintiffs acquired their properties.  *See* Exs. 9-12 (neighborhood residents complaining of offensive odors for the last 10 to 20 years).  So like the purchasers in *Vann*, *Senn*, *Premcor*, and *Brinston*, the named Plaintiffs also lack standing because they acquired land allegedly already injured by a permanent nuisance. There is no evidence the named Plaintiffs owned the properties at issue when the alleged nuisance first accrued.  In fact, the evidence conclusively establishes they did not own the property.  *See* Ex. 7 at 16:12-18 (Gao-Rabsatt closed on the property in December 2014); Ex. 4 at 14:18-21 (Nixons purchased in March 2012); Ex. 6 at 10:8-12 (Pierces purchased in April 2014); Ex. 2 at 16:16-17:1 (Lowes purchased in 2007). There is also no evidence the named Plaintiffs possess express assignments of the right to sue from former owners who owned the property at the time of accrual.  Accordingly, the named Plaintiffs lack standing to sue.[4]

**D.     Alternatively, Plaintiffs' claims are barred by limitations.**

Assuming the named Plaintiffs have standing to sue—which they do not—they must still bring their negligence claims within two years.  Because Plaintiffs did not do so, limitations bars the negligence claims of the eight named Plaintiffs as a matter of law.

**1.     Plaintiffs' negligence claims are subject to a two-year statute of limitations.**

A negligence claim seeking to recover for a nuisance injury is subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Town of Dish v. Atmos*

---

[4] The discovery rule has no application in the standing context.  *See Senn*, 55 S.W.3d at 226 ("The discovery rule cannot work to transfer the ownership of a cause of action from one person to another simply because the second person claims to have discovered the injury.").

*Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017).  This lawsuit was filed on November 17, 2016.  To be timely, Plaintiffs' negligence claims must have accrued *no earlier than* November 17, 2014.  BRL has the burden to prove the defense of limitations.  *Id.*

### 2.  Plaintiffs' negligence claims accrued more than two years prior to the initiation of this lawsuit.

#### a.  The accrual date is a question of law.

The date that a claim to recover for negligence causing a nuisance injury accrues is "not defined by statute, but is a question of law for the courts." *Schneider*, 147 S.W.3d at 270.  A claim to recover for permanent nuisance "accrues when the condition first substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Town of Dish*, 519 S.W.3d at 609 (internal quotation marks omitted); *see also Schneider*, 147 S.W.3d at 270 ("A permanent nuisance claim accrues when injury *first* occurs or is discovered[.]").

#### b.  Plaintiffs' claims accrued prior to November 17, 2014.

Residents in the area surrounding BRL alleged odors in the area with the Texas Commission on Environmental Quality (TCEQ) since at least 2004.  *See* Exs. 15-17; *see also* Ex. 19 (Sample Set of Other TCEQ BRL Complaints).  TCEQ also recorded odor complaints attributed to other industries for over a decade.  Ex. 20 (Sample Set of TCEQ Complaints from Other Surrounding Entities).  BRL disputes that it is the cause of any nuisance odor in Plaintiffs' neighborhood.  However, if the nuisance condition alleged by Plaintiffs exists, it existed long before November 17, 2014.  As a matter of law, the various property owners' permanent nuisance claims accrued more than two years before Plaintiffs

filed this suit.  *See Town of Dish*, 519 S.W.3d at 609; *Schneider Nat'l Carriers*, 147 S.W.3d at 270.

### c. The "discovery rule" does not apply.

Plaintiffs may contend their claims did not accrue earlier based on the "discovery rule."  Even if Plaintiffs had properly pleaded the discovery rule,[5] it does not apply here.

The discovery rule is a "very limited exception" to the standard accrual rule and applies only "when an injury is both inherently undiscoverable and objectively verifiable." *Schneider*, 147 S.W.3d at 279.  "As plaintiffs will usually know of unreasonable discomfort or annoyance promptly, application of the discovery rule in nuisance cases is rare."  *Id.*

Nothing about the complained-of odor is "inherently undiscoverable."  An odor, like other forms of physical nuisance, is inherently *discoverable*, "particularly after years of vociferous complaints."  *Town of Dish*, 519 S.W.3d at 612–13 (air contaminants creating a nuisance were not inherently undiscoverable); *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017) (soil contamination caused by oil and gas operations was not inherently undiscoverable).  A person injured by a discoverable nuisance cannot benefit from the discovery rule.

---

[5] While a plaintiff in federal court is not required to plead the discovery rule by name, it does have an obligation to plead "sufficient facts to put the defense on notice" that the rule will be invoked. *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1425 (5th Cir. 1992) (internal quotation marks omitted).  Here, the Complaint does not suggest Plaintiffs believe their injuries were inherently undiscoverable.  To the contrary, the Complaint suggests Plaintiffs and their neighbors were acutely aware of their alleged injuries.  *See* Compl. (Dkt. No. 1), ¶3.07 ("Defendant's landfill and its emissions have been the subject of frequent complaints from residents in the nearby residential area."); *id.* ¶3.08 ("Residents of approximately 100 households have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's landfill.").

**d.** **Even if the "discovery rule" applies, most Plaintiffs' claims are still barred.**

If the discovery rule applied to this scenario, it would only toll the limitations period until the named Plaintiffs discovered their injuries (or could have done so through the exercise of reasonable diligence). *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) ("The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim."). "Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) (internal quotation marks omitted).

The testimony of six of the eight named Plaintiffs establishes their actual knowledge of the facts giving rise to their claims more than two years prior to this lawsuit being filed:[6]

- **Lowe Plaintiffs Knew of Alleged Injuries by 2007 So Claims Are Time-Barred**

  Plaintiffs Iolanda and Madison Lowe have lived in their property since 2007. *See* Ex. 2 at 16:16–24. Mrs. Lowe noticed the odor within months of moving in. *Id.* at 17:11–25. She discussed the odor with a neighbor, who attributed it to the landfill. *Id.* And she signed a door-to-door petition regarding odors in the neighborhood that same year. *Id.* at 21:21–22:14. Because the Lowes knew of their alleged injuries in 2007, their claims are barred by limitations even if the discovery rule applies.

---

[6] The two exceptions are Plaintiffs Alvin Rabsatt and Jing Gao-Rabsatt, who did not move into their property until January 2015. *See* Ex. 8 at 20:14–15. Because these Plaintiffs did not live in the area more than two years prior to the filing of the lawsuit, their claims are not barred by limitations, only *if* the Court determines that their claims survive the challenge based on their lack of standing *and* determines that the discovery rule applies.

281.011/633859

- **<u>Nixon Plaintiffs Knew of Alleged Injuries by 2012 So Claims Are Time-Barred</u>**

  Plaintiffs Patricia and Barry Nixon have lived in their property since March 2012.  *See* Ex. 4 at 14:18–21; Ex. 21 (P. Nixon Deposition) at 12:21–13:7.  Mr. Nixon discussed the landfill with the seller of the property prior to purchasing the home.  *See* Ex. 4 at 15:9–13.  The Nixons have been aware of the odor since they moved in.  *See* Ex. 4 at 19:4–12 ("ever since we've been there"); Ex. 21 at 34:8–22 ("a couple of weeks or something after we were in the house").  Because the Nixons knew of their alleged injuries in 2012, their claims are barred by limitations even if the discovery rule applies.

- **<u>Pierce Plaintiffs Knew of Alleged Injuries by August 2014 So Claims Are Time-Barred</u>**

  Plaintiffs Katherine and Arthur Pierce have lived in their property since April 30, 2014.  *See* Ex. 6 at 10:8–12; Ex. 18 at 19:6–8.  Mr. Pierce noticed the odor by the end of summer that year.  *See* Ex. 6 at 20:14–19; 38:4–11.  Neighbors told Mr. Pierce the odor came from the landfill late in the summer of 2014.  *Id.* at 28:17–30:2.  Mrs. Pierce also noticed the odor within the first year of living in the house.  *See* Ex. 18 at 19:9–13.  Because the Pierces were aware of their alleged injuries by late summer of 2014, their claims are barred by limitations even if the discovery rule applies.

### <u>CONCLUSION</u>

For the foregoing reasons, BRL respectfully requests the Court grant its Motion for Summary Judgment, enter judgment that the named Plaintiffs take nothing on their claims against BRL, and award BRL all further relief to which BRL may show itself justly entitled.

281.011/633859

Respectfully submitted,


**BECK ı REDDEN LLP**

By:   */s/ Troy Ford*
       Troy Ford
       Texas Bar No. 24032181
       S.D. Tex. 30253
1221 McKinney Street
Houston, Texas 77010
Tel: 713.951.6222   Fax: 713.951.3720
tford@beckredden.com

**ATTORNEY-IN-CHARGE FOR
DEFENDANT**

17

**OF COUNSEL:**

Patrice B. Childress
Texas Bar No. 24059569
S.D. Tex 869631
pchildress@beckredden.com
**Beck Redden LLP**
1221 McKinney Street
Houston, Texas 77010
Tel: 713.951.6222   Fax: 713.951.3720

William G. Beck
MO Bar No. 26849
Robert G. Rooney
MO Bar No. 43381
Allyson E. Cunningham
MO Bar No. 64802
*Admitted Pro Hac Vice*
**Lathrop & Gage LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, MO  64108-2618
Tel: 816.292.2000   Fax: 816.292.2001
wbeck@lathropgage.com
rrooney@lathropgage.com
acunningham@lathropgage.com

281.011/633859

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on all counsel of record on this 10th day of August, 2018, by electronic service through email service:

> Brenton J. Allison
> Texas Bar No. 24040417
> Douglas T. Gilman
> Texas Bar No. 24048496
> Gilman & Allison
> 2005 Cullen Boulevard
> Pearland, Texas 77581
> Telephone: (713) 224-6622
> Telecopier: (866) 543-3643
> ballison@gilmanallison.com
> dgilman@gilmanallison.com
>
> David R. Dubin
> Nicholas A. Coulson
> *Admitted Pro Hac Vice*
> LIDDLE & DUBIN PC
> 975 E. Jefferson Avenue
> Detroit, Michigan 48207-3101
> Tel: (313) 392-0015/Fax: (313) 392-0025
> ddubin@ldclassaction.com
> ncoulson@ldclassaction.com
>
> ATTORNEYS FOR PLAINTIFFS
> AND THE PUTATIVE CLASS

/s/ *Troy Ford*
Troy Ford