IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JING GAO, ALVIN RABSATT, BARRY NIXON, PATRICIA NIXON, KATHERINE PIERCE, ARTHUR PIERCE, MADISON LOWE, and IOLANDA LOWE, on behalf of themselves and all others similarly situated, | § § § § § § | CIVIL ACTION NO. 3:16-cv-00323 |
| VS. | | |
| BLUE RIDGE LANDFILL TX, LP | | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BLUE RIDGE
LANDFILL TX, LP'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE DISTRICT JUDGE:

Plaintiffs Jing Gao, Alvin Rabsatt, Barry Nixon, Patricia Nixon, Katherine Pierce, Arthur Pierce, Madison Lowe, and Iolanda Lowe, on behalf of themselves and all others similarly situated, respond in opposition to Defendant Blue Ridge Landfill TX, LP's Motion for Summary Judgment ([Doc. No. 61]), stating as follows:

## INTRODUCTION

Defendant's motion collapses into its own hypocrisy. Defendant maintains, as it has throughout this case, that the odor complaints attributed to its facility cannot be used to establish that it has created a nuisance, as those complaints must in reality be attributed to one or another alternative facility. At the same time, Defendant relies on odor complaints made against its landfill dating back to 2006 in asserting that Plaintiffs must be alleging a permanent nuisance for which they lack standing or for which their claims are barred by the statute of limitations. Beyond the internal inconsistency of Defendant's positions, this argument is fatally flawed in that it assumes

1

that the first time any number of odor complaints were attributed to the landfill marks the beginning of the nuisance that Plaintiffs allege. That is not what the law says.

The relevant consideration is not when any odor emitted by Defendant was first detected or reported in Plaintiffs' neighborhood. The relevant consideration is when the nuisance began. And Despite Defendant's utter falsehood that "Plaintiffs allege continuous odors in the area since at least 2007" ([Doc. No. 61], 3) the evidence overwhelmingly demonstrates that the nuisance Plaintiffs allege began less than two years before this action was initiated.[1] As noted by the Texas Commission on Environmental Quality ("TCEQ"), "the TCEQ Houston Region Office began receiving odor related complaints from citizens in and around the Shadow Creek Ranch subdivision" in August, 2015. While a smaller number of odor complaints had been made prior to that time, this is when Defendant's previously more minor odor, sporadic odor emissions rose to the level of a nuisance.

Yet ultimately, whether and when Plaintiffs' claims amounted to a nuisance is a question of fact for the jury. Therefore, while the evidence plainly supports a determination that any permanent nuisance arose in late 2015, that determination is premature. Defendant's motion is a remarkable invitation for the Court to hold, as a matter of law and contrary to the overwhelming weight of the evidence, that Plaintiffs' allegations involve a permanent nuisance which began so long ago that it must be allowed to continue indefinitely as some sort of interminable pollution easement. Put differently, in order to grant the relief Defendant requests, the Court would need to find that 1) this determination does not rest on questions of fact reserved for the jury; 2) the

---

[1] Plaintiffs filed an Unopposed Motion to Extend the Deadline to Respond to Defendant's Motion to Dismiss ([Doc. No. 62]) because a large portion of the evidence that supports Plaintiffs' position is contained in the transcript of TCEQ's Fed. R. Civ. P. 30(b)(6) deposition of August 24, 2018, and the transcript is not yet available. Plaintiffs request that the Court consider allowing a them to file a supplemental brief setting forth that evidence.

nuisance is inarguably permanent; and 3) the nuisance began prior to 2015. Defendant's motion fails to clear each of these hurdles, and must therefore be denied.

## FACTUAL BACKGROUND

Plaintiffs filed this action on November 17, 2016. In sum, they allege that Defendant negligently created an odor nuisance through the failure to control the odorous emissions from its landfill, and Defendant's odors have deprived them of the ability to use and enjoy their homes in the Shadow Creek Ranch area. Defendant's landfill has operated since at least 1992. ([Doc. No. 61], 1). Some of the named Plaintiffs have lived in their homes as long as 11 years. *Id.* And while some of the Plaintiffs testified that they first detected odors from the landfill before 2015,[2] the evidence undeniably supports the conclusion that Defendant's odors reached the threshold of a nuisance in late 2015.

A TCEQ odor complaint fact sheet notes that "[i]n August 2015, the TCEQ Houston Region Office began receiving odor related complaints from citizens in and around the Shadow Creek Ranch Subdivision." (Exhibit 1, TCEQ August 2018 Pearland Odor Complaints Fact Sheet). "As of August 1, 2018 citizens [had] filed 5,253 complaints and the TCEQ [had] conducted 169 investigations into these complaints" (*Id.*) Over the course of a single year from August 2015 to September 2016, nearly 1600 odor complaints were lodged by area residents regarding nuisance

---

[2] Counsel for Defendant asked each Plaintiff when they first detected odors from the landfill. And Despite asking the Plaintiffs a variety of questions about whether certain timing and weather conditions make the odor worse, neither of the two attorneys for Defendant that deposed the Plaintiffs ever asked one of them whether the odors had worsened over time. (Except for Jing Gao, who closed on her home in December of 2014 and therefore could not have observed the odors outside the limitations period). This is either a glaring oversight or, more likely, a calculation designed to avoid testimony that would undermine Defendant's present argument. Plaintiffs would be happy to provide the Court with each of the full deposition transcripts, but have not attached them at this time to avoid an unnecessary burden on the Court.

odors. (Exhibit 2, TCEQ September September 2016 Pearland Odor Complaints Fact Sheet). This stands in stark contrast to the handful of complaints identified to Defendant prior to that time.

Indeed, Defendant, which is heavily regulated by TCEQ, did not receive its first citation for "failure to prevent nuisance conditions" (resulting in a "documented" "odor nuisance") until 2016. In response to the overwhelming volume of complaints, after an investigation that took place from May 4, 2016 to August 18, 2016, the TCEQ cited Defendant for creating a documented odor nuisance. (Exhibit 3, TCEQ 2016 Notice of Enforcement to Blue Ridge for Creating Odor Nuisance). It appears that this is the first such citation ever received by Defendant. Then, in a related October-November 2016 investigation, TCEQ cited Defendant for failure to properly monitor its surface emissions, which Defendant's own designee testified is a crucial practice for mitigating emissions. (Exhibit 4, TCEQ Blue Ridge Landfill Compliance Report). TCEQ has issued Defendant six other violations between 2016 and the present, most of which relate to issues that can cause odor. (*Id*). These things happened no earlier than 2016. But there is still more. Further indications that the odor nuisance began at the earliest in late 2015 include:

1) A 2015 TCEQ report notes that "A consensus among the complainants is that the intensity of the odor has been growing in the past few months." (Exhibit 5, TCEQ Pearland Odor Investigation Report 9/25-10/30 of 2015, Page 3).
2) A May 25, 2016 City of Pearland Memorandum refers to "the odor events of the past eight months." (Exhibit 6, Page 2).
3) The City of Pearland itself has sued Defendant for its odor nuisance, and its complaint also alleges an odor nuisance beginning October, 2015. (Exhibit 7 ¶¶ 12-13).
4) Defendant's own landfill manager and corporate designee testified that in 2016, there was a "substantial increase" in the number of odor complaints received by TCEQ. (Exhibit 8, Rogers Dep. 78:7-10).
5) Testimony from the August 24, 2018 deposition of TCEQ's agency designee clearly delinated the beginning of the odor event and ties it to particular observations and investigations. Plaintiffs intend to supplement the record with that testimony once it becomes available.

This list is illustrative, and in no way exhaustive. The parties have endeavored to complete the discovery necessary to brief a motion for class certification, and discovery remains ongoing.

Defendant's motion comes before the development of the full record, but there remains ample evidence to deny it.

Defendant identifies one complaint from 2015, and two complaints from 2006. (Doc. No. 61-16] – [Doc. No. 61-18]). Defendant has not identified the location of a single one of these complaints. Defendant seems to assume that just because it asserts that someone, somewhere (Defendant does not offer complainant locations) alleged that they detected odors attributable to the landfill, that the entire Class must have been subjected to a nuisance at that time.

## LEGAL STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56. To support a motion for summary judgment, "the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).  When evidence of contradictory facts has been submitted, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*  (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Indeed, it is well settled that in "considering a motion for summary judgment, the court has no duty or function to try or decide factual issues.  Its only duty is to determine whether or not there is an issue of fact to be tried." *See Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969).

## ARGUMENT

### A. WHEN THE NUISANCE BEGAN AND WHETHER FUTURE INJURY CAN BE ESTIMATED WITH REASONABLE CERTAINTY ARE QUESTIONS FOR THE JURY

Texas law recognizes that not every odor will constitute a nuisance. "There is no question that foul odors, dust, noise, and bright lights - if sufficiently extreme - may constitute a nuisance" *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004). "A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 595 (Tex. 2016) (citation omitted). "[T]he questions of whether an interference with the use and enjoyment of property is substantial, whether the effects of such an interference on the plaintiffs are unreasonable, whether the defendant intentionally or negligently created the interference, and whether the interference results from abnormally dangerous activities generally present questions of fact for the jury to decide… A court may decide the issues as a matter of law only if the underlying facts are undisputed or, in light of all the evidence, 'reasonable minds cannot differ.'" *Id.* at 609. One key factor in this determination is "the magnitude, extent, degree, frequency, or duration of the interference and resulting harm[.]" *Id.* at 600. "Jurors must still decide the frequency, extent, and duration of noxious conditions, facts they must settle in any event in deciding whether a nuisance exists. Jurors must also settle any disputes as to whether similar conditions are reasonably certain to continue in the future." *Schneider Nat'l Carriers,* 147 S.W.3d at 281-82.

The key determinations of fact underlying the central questions of (1) whether the nuisance is temporary or permanent and (2) if permanent, when the nuisance began rest on determinations that are reserved for the jury. There is extensive evidence that the nuisance may be properly

considered as temporary and/or began no earlier than late 2015, and almost no evidence to the contrary. It certainly cannot be said that "reasonable minds cannot differ" except perhaps in finding *against* Defendant's argument of a permanent nuisance that began before 2015. Therefore, the relief Defendant seeks cannot be granted as a matter of law, and Defendant's motion should be denied.

## B.  A JURY COULD FIND THAT THE NUISANCE WAS TEMPORARY

Even if Defendant's motion did not hinge on questions of fact that are clearly reserved for the jury, it is not at all clear that Defendant's nuisance should not be deemed temporary. The distinction between permanent and temporary nuisance relies on a determination of whether it is sufficiently "irregular or intermittent…that future injury cannot be estimated with reasonable certainty." *Schneider,* 1147 S.W.3d at 281. As noted previously, "[j]urors must also settle any disputes as to whether similar conditions are reasonably certain to occur in the future." *Id.* at 281-82. While courts typically determine issues related to accrual of limitations periods, "[j]urors should be asked to settle the question …to the extent there is a dispute regarding what interference has occurred or whether it is likely to continue." *Id.* at 281-82.

A jury could easily conclude that conditions similar to those Defendant has imposed upon the Plaintiffs are not reasonably certain to occur in the future. The landfill operated for a long time without imposing similar conditions. There is substantial evidence that a concentrated period of failure and mismanagement led to the conditions, and steps have been taken by TCEQ to ensure that this failure and mismanagement is remediated such that the conditions should not continue. The staggering spike in odor complaints, as well as TCEQ's multiple violations, mark a departure from what had been the landfill's ordinary course of business. A jury could reasonably conclude that this landfill, like others, can and should operate without causing a nuisance, and therefore that

the nuisance (or similar) conditions are not reasonably certain to occur in the future. In that event, Defendant's permanent nuisance standing and statute of limitations arguments would both be irrelevant, as Plaintiffs would be entitled to recover for temporary nuisance damages dating back two years prior to the date the action was filed.

### C.   EVEN IF THE NUISANCE IS DEEMED PERMANENT, IT IS CLEAR THAT IT BEGAN LATE IN 2015 AND PLAINTIFFS' CLAIMS ARE THEREFORE NOT BARRED AND THEY HAVE STANDING TO PURSUE THEM

Finally and perhaps most importantly, it is obvious that to the extent the nuisance is deemed permanent it began no sooner than 2015, leaving Plaintiffs' claims intact. The evidence of this is overwhelming. The dramatic spike in odor complaints in late 2015 lead to TCEQ's odor nuisance investigation and citation against Defendant in 2016. The odor nuisance citation was supported by the surface emissions monitoring investigation, which demonstrated the likely cause of the nuisance odors. Defendant had not been cited for creating a nuisance prior to this time, and complaint activity had been incomparably lower. Defendant can point only to the fact that some odors were allegedly present prior to this time, but can offer no evidence to support the necessary determination that they were of sufficient "magnitude, extent, degree, frequency, or duration" to constitute a nuisance. See *Gardiner*, 505 S.W.3d at 600.

At some point in this litigation, Defendant will no doubt fall back on the position that even if its interference with Plaintiffs' property rights was substantial, it must also be "unreasonable" for Plaintiffs to recover. Undoubtedly, Defendant will soon assert that people living near a landfill should be expected to bear some occasional odors. See, e.g., *Id.* at 595-96. ("Thus, for example, while noises or odors from a horse stable might occasionally or minimally 'interfere' with the enjoyment of neighboring land, they can create a nuisance only if the stable is 'so kept, or so used, as to destroy the comfort of persons owning and occupying adjoining premises, and impair their

8

value.'")(citation omitted). But the same is true here. In order to rise to the level of a nuisance, the odors must have caused both a substantial and unreasonable interference. The rise in odors in late 2015 plainly carried the interference past both the substantial and unreasonable thresholds. This is true in terms of "magnitude, extent, degree, frequency, or duration" of the odor. See *Gardiner*, 505 S.W.3d at 600. The difference between receiving sporadic complaints and receiving thousands of complaints per year *on top of* citations for, among other things, creating an odor nuisance, is a stark one. The nuisance, if permanent, began no sooner than late 2015.

<u>**CONCLUSION**</u>

Plaintiffs' claims are not barred by the statute of limitations and Plaintiffs do not lack standing to bring them. Defendant's positions rest on questions that are reserved for determination by a jury. Even if they did not, there is ample evidence from which it could be concluded that the nuisance in this case is not reasonably certain to continue so as to allow for estimation of future injury, such that the nuisance is temporary. Even further, if the nuisance is permanent, it began in late 2015, well within the look-back period of the statute of limitations. Defendant's motion fails at all three separate stages of the relevant analysis, and must therefore be denied.

Dated: August 31, 2018

Respectfully submitted,

GILMAN ✳ ALLISON LLP


*/s/ Brenton J. Allison*
Brenton J. Allison
Texas Bar No. 24040417
Federal I.D. No. 36863
Douglas T. Gilman
Texas Bar No. 24048496
Federal I.D. No. 19897
Telephone (713) 224-6622
Facsimile (866) 543-3643
ballison@gilmanallison.com

David R. Dubin*
Nicholas A. Coulson*
*Pro Hac Vice Motions to be Submitted*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
ddubin@ldclassaction.com
ncoulson@ldclassaction.com

**ATTORNEYS FOR PLAINTIFFS AND THE
PUTATIVE CLASS**

**OF COUNSEL:**

GILMAN ✳ ALLISON LLP

Liddle & Dubin, P.C.

10

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I electronically filed this document on this **31st day of August, 2018**, and that a true and correct copy of the foregoing was served on all counsel of record via CM/ECF, facsimile (pursuant to written agreement of counsel), hand delivery, or certified mail – return receipt requested.

      Troy Ford                             ***VIA CM/ECF***
      Patrice Childress
      Beck Redden LLP
      1221 McKinney Street
      Houston, Texas 77010

      William G. Beck                   ***VIA CM/ECF***
      Robert G. Rooney
      Lathrop & Gage LLP
      2345 Grand Blvd., Suite 2200
      Kansas City, Missouri 64108-2618

                                   */s/ Brenton J. Allison*
                                   Brenton J. Allison