# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JING GAO, et al. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 3:16-cv-00323 |
| BLUE RIDGE LANDFILL TX, LP | ) ) ) | |
| Defendant. | ) ) | |

## BLUE RIDGE LANDFILL TX, LP'S REPLY
## TO PLAINTIFFS' SUPPLEMENTAL BRIEF

The "short" supplemental briefing submitted by Plaintiffs includes thousands of pages of exhibits, including TCEQ complaints, reports and charts as well as a voluminous set of full deposition transcripts. Because Plaintiffs greatly exceeded the Court's permission to file supplemental briefing, BRL is forced to object to late-filed evidence and address the new arguments raised by Plaintiffs. BRL's Objections to Improper and Late-Filed Summary Judgment Evidence, filed this same day, are incorporated here by reference. Despite the density of Plaintiffs' supplemental filing, however, Plaintiffs still provide nothing to alter the inevitable outcome dictated by the record in this case: Plaintiffs lack standing, and their claims regarding the decades-old alleged nuisance have long since lapsed.

In their latest supplemental brief, Plaintiffs invite this Court to substitute a TCEQ report for their own testimony about the alleged nuisance odors. There is no dispute that the TCEQ performs regulatory functions with respect to BRL and other entities near the Shadow Creek Ranch community, nor is there any dispute that complaints to TCEQ about odors have increased over time as more residents moved to the neighborhood. But the regulatory functions of TCEQ do not supplant Plaintiffs' own testimony and allegations about the odors they have experienced.

Plaintiffs' own testimony and allegations establish that the nuisance conditions alleged here have been regular and continuous (though perhaps not daily) for many years and well beyond the two-year period preceding suit. The TCEQ acknowledges that residents of Shadow Creek Ranch have filed odor complaints since at least 2007, and another resident filed a lawsuit in 2009 alleging the exact same claims presented by these Plaintiffs. Consider how closely the 2009 allegations align with what Plaintiffs allege now:

> *Excerpt from the 2009 Nadalo Petition*
>
> Beginning in January of 2008, my wife and I started to notice an unusual odor in the late evenings and early morning hours at Our House. Over the course of the year the odor, which is strongest in colder weather, developed into a foul rotten trashy smell. Depending on weather conditions, the odor ranges from undetectable to unbearable. When the stench is at its worst, the odor permeates the air and infiltrates Our Home.

(Ex. 5 to BRL's Motion at ¶11). Interestingly, the 2009 lawsuit also made the same claims about TCEQ complaints:

> Unfortunately, we are not the only ones affected. Recent news articles have confirmed that the 521 Landfill is causing great frustration for the citizens in and around the area . . . In fact, more than 160 complaints were filed with the

Texas Commission on Environmental Quality ("TCEQ") in 2008 alone in regards to the odor from the 521 Landfill.

(*Id.* at ¶12.)

There is no avoiding that Plaintiffs' claims came too late.

### A.   Plaintiffs Cannot Rewrite Their Testimony to Avoid Summary Judgment.

Plaintiffs allege that "none of [the Plaintiffs] have alleged or testified to facts constituting a nuisance any time prior to late 2015." (Supp. Brief at 2.) This is not true. *See* chart in BRL's Reply to Motion for Summary Judgment describing odors at pp 3-7. Plaintiffs' live pleadings and testimony (in each of their depositions) described in great detail the alleged nuisance odors prior to 2015.

#### 1. Plaintiffs Misstate the Burden Regarding Standing

Standing is a requirement for federal subject-matter jurisdiction, and it is Plaintiffs' burden to set forth by affidavit or other evidence specific facts to demonstrate that standing exists. Plaintiffs failed to provide any such evidence. Plaintiffs' allegation that BRL should disprove standing by providing evidence from prior owners in Shadow Creek Ranch misstates the burden.

#### 2. Plaintiffs Also Misstate Their Own Testimony

Each of the Plaintiffs testified that they experienced the alleged nuisance odors shortly after moving into their respective homes—in some cases as early as 2007.[1]

---

[1] We will not recite again here the testimony from each of the Plaintiffs establishing when they first experienced the odors—that is included in both BRL's Motion and Reply. We do note, however, that Plaintiffs' latest brief blatantly misrepresents the testimony of Ms. Kathryn Pierce, in particular, by suggesting that she did not identify odors until 2015—she testified that she identified odors shortly after moving in 2014, as cited previously by BRL. (BRL Reply, Ex. 2, at 24:13-24.)

3

281.011/637789

Plaintiffs' own testimony flatly contradicts Plaintiffs' new argument that odors did not arrive until 2015.

In Plaintiffs' newly filed (and untimely) declarations submitted from the Nixon and Lowe Plaintiffs, each of these individuals admits that the odors existed, but claim the odors later became "more bothersome." The fact that Mr. and Mrs. Nixon claim that the odors became *more* bothersome does not alter the fact that they identified the odors just a couple weeks after they moved into their home in 2012 and that, in Mrs. Nixon's own words, they discovered at that time that "we're going to have a stinky neighborhood." (BRL Reply, Ex. 3, at 34:8-35:4.) Likewise, the fact that Mr. and Mrs. Lowe now, according to their declarations, find the odors to be "more bothersome" does not undo their prior testimony that they have experienced "consistently that sort of rotten egg, trashy smell" over all the years they've lived in the house since 2007. (BRL Reply, Ex. 1, at 33:7-11, 35:15-23.) An alleged nuisance odor that from time to time becomes "more bothersome" does not alter the nature of the alleged nuisance odor.

Neither the Plaintiffs' testimony nor their untimely declarations describe any sudden or recent changes in the nature of their discomfort or changes in their alleged injuries. To the contrary, as in *Schneider*, the testimony of the residents themselves establish that the conditions alleged here have been regular and continuous (though perhaps not daily) for many years beyond the two-year period preceding suit.

## B.     TCEQ Records Do Not Address When or How These Plaintiffs Experienced the Alleged Nuisance.

Plaintiffs submit TCEQ records documenting investigations in 2016 and 2017. Those records only establish that the State of Texas regulates BRL and other entities in the area. But whether and how the TCEQ conducts its business cannot substitute for how these Plaintiffs described the alleged odors present in Shadow Creek Ranch since 2007. Whether an alleged odor nuisance existed as early as 2007 is answered by the Plaintiffs' own pleadings, deposition testimony, odor data sheets, prior TCEQ complaints and the earlier lawsuit.

Plaintiffs' argument now that the TCEQ establishes when a nuisance condition exists is wrong. First, it is for this Court—not the TCEQ—to decide as a matter of law whether the injury alleged by Plaintiffs constitutes a temporary or permanent nuisance. The Court makes that determination according to the standard set by the Texas Supreme Court. *See Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 481 (Tex. 2014). The TCEQ applies a different standard. In undertaking their regulatory and enforcement work, the TCEQ evaluates alleged nuisance conditions according to the definitions and standards set out by the Texas Administrative Code and their own FIDO chart.[2]

Second, Plaintiffs again argue that an increase in complaints to TCEQ about odors in the Shadow Creek Rank community indicates when the alleged nuisance arose. But

---

[2] The TCEQ issues an odor identification chart to investigators who then drive around smelling the air trying to correlate an odor to a specific level of strength according to a chart listing Frequency, Intensity, Duration and Odor (FIDO). (*See* Deposition of K. McLeod at 238:5-239:1.)

Plaintiffs make no effort to address the equally large increase in residents in the Shadow Creek Ranch community over the last decade. An increase in TCEQ complaints cannot substitute for the testimony of the Plaintiffs themselves. In particular, Plaintiffs' charts of alleged complaints to TCEQ do not even accurately reflect complaints necessarily attributed to BRL. (Plaintiffs admit as much in footnotes 3-5 in their supplemental brief.) Indeed, a quick review of only the first page of Plaintiffs' Exhibit 2 reflects that of twelve complaint entries listed, at least ten either list no source or identify a non-BRL source (columns curiously absent from the truncated chart submitted by Plaintiffs).

In sum, TCEQ complaint activity supposedly ascribed to BRL during 2013-2018 does not alter the testimony in the record from Plaintiffs about alleged odor nuisances dating back to 2007, nor does any regulatory function of TCEQ determine the existence or onset of the nuisance alleged by Plaintiffs.

## **CONCLUSION**

Plaintiffs cannot offer TCEQ investigations and complaints as a substitute for their own testimony and allegations about the onset of the alleged nuisance dating back to 2007. For the foregoing reasons, BRL respectfully requests the Court grant its Objections to Plaintiffs' untimely evidence (incorporated by reference), grant its Motion for Summary Judgment, enter judgment that the named Plaintiffs take nothing on their claims against BRL, and award BRL all further relief to which BRL may show itself justly entitled.

Respectfully submitted,

**BECK | REDDEN LLP**

By: */s/ Troy Ford*
  Troy Ford
  Texas Bar No. 24032181
  S.D. Tex. 30253
1221 McKinney Street
Houston, Texas 77010
Tel: 713.951.6222   Fax: 713.951.3720
tford@beckredden.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT**

| | |
|---|---|
| **OF COUNSEL:** | |
| Patrice B. Childress | William G. Beck |
| Texas Bar No. 24059569 | MO Bar No. 26849 |
| S.D. Tex 869631 | Robert G. Rooney |
| pchildress@beckredden.com | MO Bar No. 43381 |
| **Beck Redden LLP** | Allyson E. Cunningham |
| 1221 McKinney Street | MO Bar No. 64802 |
| Houston, Texas 77010 | *Admitted Pro Hac Vice* |
| Tel: 713.951.6222   Fax: 713.951.3720 | **Lathrop & Gage LLP** |
| | 2345 Grand Boulevard, Suite 2200 |
| | Kansas City, MO  64108-2618 |
| | Tel: 816.292.2000   Fax: 816.292.2001 |
| | wbeck@lathropgage.com |
| | rrooney@lathropgage.com |
| | acunningham@lathropgage.com |

7

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served on all counsel of record on this 1st day of October, 2018, by electronic service through email service:

Brenton J. Allison
Texas Bar No. 24040417
Douglas T. Gilman
Texas Bar No. 24048496
Gilman & Allison
2005 Cullen Boulevard
Pearland, Texas 77581
Telephone: (713) 224-6622
Telecopier: (866) 543-3643
ballison@gilmanallison.com
dgilman@gilmanallison.com

David R. Dubin
Nicholas A. Coulson
*Admitted Pro Hac Vice*
LIDDLE & DUBIN PC
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) 392-0025
ddubin@ldclassaction.com
ncoulson@ldclassaction.com

ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE CLASS

/s/ *Troy Ford*
Troy Ford